**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Robert Tackett; and The Charleston Firefighters Association, International Association of Fire Fighters, Local 61,<br><br>Plaintiffs,<br><br>v.<br><br>The City of Charleston; Daniel Curia, individually and in his official capacity as Fire Chief; and Forrest Cockcroft, individually and in his official capacity as Deputy Fire Chief,<br><br>Defendants. | C/A No.: 2:25-cv-1338-RMG<br><br>**Complaint**<br>**(Jury Trial Demanded)** |

Plaintiff Robert Tackett ("Tackett"), and the Charleston Firefighters Association, International Association of Fire Fighters, Local 61 ("Local 61"), collectively "Plaintiffs", complaining against the City of Charleston, South Carolina ("City"), Fire Chief Daniel Curia ("Curia"), Deputy Chief Forrest Cockroft ("Cockroft"), collectively "Defendants", would respectfully show unto this honorable Court the following:

**PARITIES, JURISDICTION, AND VENUE**

1.   Defendant City is a municipal subdivision in the State of South Carolina with the authority to sue and be sued in its own name and is a "person" within the meaning of 42 U.S.C. § 1983. The City owns property and conducts business in Charleston, South Carolina. The City operates the Charleston Fire Department ("CFD"), which provides fire fighting services as well as technical rescue services, hazardous materials services and

1

emergency medical services to the citizens of Charleston, South Carolina. The City employs at the CFD Plaintiff Robert Tackett and approximately 390 other uniformed and non-uniformed employees.

2. Defendant Curia is, and at all times material to this Complaint, Fire Chief of the CFD and is a citizen and resident of South Carolina.

3. Defendant Curia is the final decisionmaker and policymaker in charge of CFD with respect to the decisions challenged as unconstitutional in this matter, including but not limited to the decision whether or not to issue discipline.

4. No other person or public body reviews Defendant Curia's decisions with respect to the discipline of firefighter personnel, including personnel decisions referenced in this Complaint.

5. Defendant Cockroft is, and at all times material to this Complaint, has been Deputy Fire Chief of the CFD and is a citizen and resident of South Carolina.

6. Plaintiff Tackett is a citizen and resident of South Carolina and a fire fighter employed by CFD at all times material to this Complaint.

7. Plaintiff Local 61 is a labor organization with members comprised of employees of CFD who hold the rank of Captain or below, including Plaintiff Tackett.

8. This is a civil action brought under 42 U.S.C. § 1983 for declaratory and injunctive relief, damages, and attorneys' fees and costs to redress Defendants' unlawful deprivation of Plaintiffs' rights and privileges secured by the First and Fourteenth Amendments of the U.S. Constitution.

9. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Plaintiffs claims arise under the laws of the United States, and they seek redress for violations of federal laws. The Court has jurisdiction to award the

requested costs and attorneys' fees under 42 U.S.C. § 1988, and to issue injunctive relief, a declaratory judgment and other just and appropriate relief pursuant to 28 U.S.C. §§ 2201-02.

10. This Court has *in personam* jurisdiction over Defendants, all of whom reside and/or work in the State of South Carolina.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391, as all Defendants are located within the District of South Carolina and either all or a substantial part of the events and omissions giving rise to this action occurred within the District of South Carolina.

## **FACTS**

11. Tackett, a fire fighter, is employed by CFD and is a member of Local 61. Tackett is the deputy commander of the Tactical Emergency Medical Services team. He also serves CFD as an EMT instructor and was honored as Instructor of the Year in 2023.

12. Tackett has served CFD for more than 11 years, including five years at Station No. 9 as the hazmat team's most senior member on his shift. He was also Station No. 9's only member with a toxicology certification — a specialized certification for addressing chemical exposure.

13. Dangerous and deficient living and working conditions at Station No. 9 have been the subject of numerous prior complaints by numerous firefighters over the previous five years and were well-known to the Defendants.

14. Specifically, Local 61 and CFD employees made complaints about dangerous and deficient living conditions ranging from foul odors, mold growth, water

damage on drywall and ceiling tiles, multiple leaks requiring large buckets in living quarters, broken air conditioning units, and a malfunctioning fire pole.

15. Prior to July 17, 2024, Tackett and other CFD employees submitted requests for investigation and remediation of these dangerous and deficient conditions to superiors in an effort to address these issues, and these requests were regularly and routinely ignored and/or met with indifference as CFD had no formalized system for making, logging, and tracking such complaints or making related repairs.

16. Further CFD also had an official policy and/or custom of non-responsiveness to said living condition complaints and further as to their ultimate repair and/or amelioration, such that the making of such complaints by fire fighters was often seen as futile.[1]

17. On July 17, 2024, Tackett contacted Local 61 to report another dangerous and defective living condition — specifically, that firefighters working 24-hour shifts were unable to sleep or rest in the multiple bunk rooms in Station No. 9 as those bunk rooms were consistently hotter than 90 degrees Fahrenheit as measured by the station's thermal imaging camera.

18. Excessive heat was a matter of urgency as firefighters who were sleep-deprived and/or affected by mold growth posed a risk to themselves and the public at large. By reporting this dangerous and defective living condition to Local 61, Tackett hoped that this issue of public safety would be promptly addressed.

---

[1] https://www.live5news.com/2024/11/26/charleston-temporarily-closes-fire-station-with-hvac-issues-dating-back-years/ Published: Nov. 26, 2024 at 6:58 PM EST CHARLESTON, S.C. (WCSC) ("The Charleston Fire Department closed one of its stations for the next couple of weeks to replace an HVAC system, but documents detail HVAC issues that have been going on for years. Charleston Chief Fire Marshal Mike Julazadeh announced the temporary closure of Station 9, located at 1451 King St. Extension, on Monday. But emails and work orders from numerous Charleston Fire employees detail continuous HVAC issues and water leaks dating back to at least 2019.")

19. On July 17, 2024, the same day, Local 61's President John E. Baker, II informed Fire Chief Curia of Station No. 9's excessive heat, prompting Curia to visit the station.

20. During a station tour, Curia stated that there were five rooms with working air-conditioning and recommended that station personnel move into those rooms if they could not go without air conditioning.

21. Before Curia left the station, Tackett told him that he was the one who had made the recent complaint.

22. On July 23, 2024, Captain Jeremy Tipton informed Tackett that he was instructed to "write [Tackett] up."

23. Tackett asked Captain Tipton why he was being disciplined. Captain Tipton replied that he was told to "find something" in the Code of Conduct Policy because, according to Battalion Chief Anthony Morley ("BC Morely"), Tackett made "bad judgments" by contacting Local 61 about Station No. 9's high temperatures and related health and safety issues.

24. On July 23, 2024, BC Morley and Battalion Chief Larry Hood ("BC Hood") came to Station No. 9 to discuss the situation further with Tackett and Captain Tipton.

25. BC Morley stated that Tackett "went around [the] chain of command" and "should have let the system play out instead of contacting the Union."

26. BC Hood recommended that the employee feedback report should only state that Captain Tipton spoke with Tackett about "going to the Union on shift."

27. Tackett reluctantly signed the feedback report that Captain Tipton signed off on, which details the reasons for the discipline:

> F.F[.] Tackett used poor judgement in not allowing the proper chain of command to provide updates on a building maintenance issue ... I expect him to [sic] allow his company officer to use the proper chain of command ... I have agreed to coach and mentor FF Tackett to use better judgement when ongoing issues need to be fixed ... Failure to adhere to policy will result in further [sic] disciplinary action up to and including termination.

28. On July 26, 2024, Tackett met at Station No. 9 with Batallion Chief William Perez Jr. ("BC Perez"), BC Morley, and Captain Tipton.

29. BC Perez informed Plaintiff Tackett that he would be transferred to Station No. 7 on the C shift so that Tackett and Captain Tipton could get a "fresh start."

30. BC Perez added that Captain Tipton could not serve as Tackett's captain because of Tackett's seniority.

31. On or around July 26, 2024, Cockroft informed officers at Station No. 7 that Tackett was being transferred for being "continually out of uniform, disrespectful, and [because he] did not listen to my Captain."

32. Tackett's new position at Station No. 7 is not eligible for overtime pay and/or does not provide the same or similar opportunities to earn overtime pay as he had typically earned at Station No. 9 before his transfer.

33. Tackett's feedback report detailing his discipline will also remain in his personnel file, affecting future chances of promotion.

34. Any further discipline will compromise a tuition reimbursement Tackett receives from the City and/or CFD as part of his compensation.

35. Upon information and belief, CFD is under the exclusive supervision and direction of Curia, who has at all times material to this Complaint been the final decisionmaker with respect to all personnel and operational decisions of CFD.

2:25-cv-01338-RMG     Date Filed 03/04/25     Entry Number 1     Page 7 of 14

37. By imposing discipline on Tackett, Defendants violated his First Amendment rights to associate with Plaintiff Local 61 and to speak as a citizen on a matter of public concern.

38. The discipline imposed on Tackett chilled him, members of Local 61, and CFD employees, from exercising their First Amendment rights, including the right to speak as a citizen on matters of public concern.

39. By maintaining a policy, rule or requirement that employees must report concerns about dangerous working conditions affecting the CFD as a whole and its ability to provide services to the citizens of the City through the "chain of command" before and/or instead of reporting them to Local 61, Defendants have chilled Tackett and other employees from engaging in associational activity protected by the First Amendment of the United States Constitution.

40. Tackett seeks injunctive relief and a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2022 and 42 U.S.C. §§ 1983 and 1988. Tackett is pursuing compensatory damages, attorneys' fees and costs, and all other relief available under 42 U.S.C. §§ 1983 and 1988.

## **COUNT I**

**42 U.S.C. § 1983 — Violation of Tackett's Right to Free Speech
Pursuant to the First and Fourteenth Amendments to the United States
Constitution
(Plaintiff Tacket v. all Defendants in all Capacities)**

41. Plaintiffs repeats and realleges each and every allegation of the above paragraphs as if restated herein verbatim.

7

42. Tackett's right to speak freely about matters of public concern is protected by the First and Fourteenth Amendments to the United States Constitution. Citizens have a vital interest in free and open discussion on issues of public interest and importance.

43. It is a violation of the First and Fourteenth Amendments to the United States Constitution for public employers, including Defendants, to discriminate against or discipline employees in retaliation for engaging as a private citizen in speech about matters of public interest and concern.

44. Tackett reported Station No. 9's high temperatures to Local 61 on July 17, 2024, to protect himself, his fellow Union members and the public in his capacity as a Union member and private citizen concerned about fire fighter health and safety as well as firefighters' ability to serve and protect the citizens of the City. The issue Tackett raised — firefighter health and safety — is a matter of public interest and concern, because it directly impacts firefighters' ability to serve and protect the citizens of the City. Tackett's right to engage in speech about such issues is protected by the First and Fourteenth Amendments to the United States Constitution.

45. All of Tackett's statements and complaints about fire fighter health and safety at issue in this matter were made in his capacity as a citizen of South Carolina and union member and not in his capacity or pursuant to his duties as a CFD employee.

46. Defendants' decisions to discipline and transfer Tackett were motivated in response to Tackett's making of constitutionally protected statements about a matter or matters of public concern.

47. In so doing, Defendants retaliated against Tackett for engaging in activity protected by the First and Fourteenth Amendments' guarantee of the right of free speech.

48. Such conduct by Defendants was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights a reasonable person would have known.

49. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Tackett has suffered, and continues to suffer, injuries and irreparable harm.

50. Upon information and belief, Defendants' actions against Tackett were intentional, malicious, and in reckless disregard for his rights to be free from such unlawful action. Therefore, Tackett is entitled to recover punitive damages against Defendants in an amount to be determined by the jury that is sufficient to deter Defendants and others from engaging in such unlawful actions in the future.

51. Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendants are fully liable to Tackett for his injuries resulting from their retaliation in violation of the First and Fourteenth Amendments.

52. Defendants are also liable for Tackett's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT II

### 42 U.S.C. § 1983 — Violation of Tackett's Right to Freedom of Association Pursuant to the First and Fourteenth Amendments to the United States Constitution
### (Plaintiff Tackett v. all Defendants in all Capacities)

53.     Plaintiffs repeat and reallege each and every allegation of the above paragraphs as if restated herein verbatim.

54.     Tackett's right to freely associate with a labor organization is protected by the First and Fourteenth Amendments of the United States Constitution. Specifically, the First and Fourteenth Amendments protect the right of a public employee to engage in union activity, including reporting unhealthy and unsafe working conditions to a union. The public has a vital interest in such free association.

55.     Tackett reported Station No. 9's high temperatures to Local 61 on July 17, 2024, to protect himself, his fellow Union members and the public in his capacity as a Union member and private citizen. The issue Tackett raised — fire fighter health and safety — is a matter of public interest and concern, and Tackett's right to associate with others to discuss such issues is protected by the First and Fourteenth Amendments to the United States Constitution.

56.     By improperly disciplining and transferring Plaintiff Tackett, Defendants, acting individually and/or jointly, discriminated and retaliated against him for speaking about a matter of public concern. In so doing, Defendants retaliated against Tackett for engaging in activity protected by the First and Fourteenth Amendments' guarantee of the right of free association.

57. Such conduct by Defendants was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights that a reasonable person would have known.

58. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Tackett has suffered, and continues to suffer, injuries and irreparable harm.

59. Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendants are fully liable to Tackett for his injuries resulting from their retaliation in violation of the First and Fourteenth Amendments.

60. Defendants are also liable for Tackett's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT III

**42 USC § 1983 - Unlawful Prior Restraint on First Amendment Activity**
**(All Plaintiffs v. All Defendants in all Capacities)**

61. Plaintiffs repeat and reallege each and every allegation of the above paragraphs as if restated herein verbatim .

62. Defendants, through rule, policy, custom or final decision, require CFD employees to make complaints about matters of public concern through the "chain of command" prior to and/or instead of through Local 61.

63. Such rule, policy custom or final decision is an unlawful prior restraint on the exercise of associational activity protected by the First Amendment to the United States Constitution and afforded to Tackett, members of Local 61, and Local 61 itself.

64. Such rule, policy custom or final decision chills the exercise of associational activity protected by the First Amendment to the United States Constitution.

65. Local 61 desires to continue to associate with its members and in turn facilitate their exercise of First Amendment rights and privileges, including but not limited to assisting them in their advocacy for safe and healthy working conditions and other matters of public concern, but is reasonably concerned that doing so will result in one or more Defendants disciplining or otherwise retaliating against one or more of its members.

66. Plaintiffs are entitled to a declaration that such rule, policy, custom or final decision is an unlawful prior restraint on associational activity protected by the First Amendment to the United States Constitution as well as in injunction against continued maintenance of the unlawful prior restraint.

**WHEREFORE**, having full set forth their allegations against Defendants, Plaintiffs requests that this Court enter judgment on their behalf and enter an order directing the award of other relief, as follows:

  a. Declaring that Defendants unlawfully violated Plaintiffs' rights and privileges secured by the First and Fourteenth Amendments to the United States Constitution;

  b. Entering preliminary and permanent injunctions restraining and preventing Defendants from interfering with and infringing upon Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution, to include maintaining a rule requiring matters of public concern be reported initially or

exclusively through chain of command, and from otherwise ignoring Defendants' obligations under the United States Constitution, with respect to Plaintiffs and all other persons similarly situated;

c. Ordering Defendants to rescind the retaliatory, discriminatory, and otherwise unlawful discipline they issued to Tackett;

d. Ordering Defendants to cease and desist from making or maintaining any rule, policy, custom or final decision that operates as a prior restraint on Tackett's and/or Local 61's exercise of rights under the First Amendment to the United States Constitution.

e. Awarding Tackett compensatory damages for injuries to redress violations of the United States Constitution;

f. Awarding Plaintiffs punitive damages to redress the knowing, willful, wanton, reckless, and bad faith nature of Defendants' violation of rights guaranteed by the United States Constitution;

g. Awarding Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988 or any applicable statute or authority;

h. Awarding Plaintiffs any other relief to which they are entitled and/or which this Court deems necessary and proper; and

i. A jury trial is demanded for all claims triable by jury.

*(signature on following page)*

Respectfully submitted,

s/Nekki Shutt
Nekki Shutt (Fed. Bar No. 6530)
Meredith C. Brown (Fed. Bar No. 14262)
BURNETTE SHUTT & MCDANIEL, PA
Post Office Box 1929
Columbia, South Carolina 29202
Tel.  (803) 904-7912
Fax  (803) 904-7910
Nsutt@BurnetteShutt.law
Mbrown@BurnetteShutt.law

Columbia, South Carolina

March 4, 2025

Arthur R. Traynor
(*Motion for Admission Pro Hac Vice to Follow*)
MOONEY, GREEN, SAINDON, MURPHY & WELCH, P.C.
1920 L. Street, N.W., STE 400
Washington, DC  20036
Tel:  (202) 783-0010
Atraynor@mooneygreen.com

**ATTORNEYS FOR PLAINTIFFS**